We're here from the appellant May it please the court Kristen Kimmelman for mr. Cruz At trial mr. Cruz conceded that he was guilty of count three, which was sexual abuse of a minor He contested the allegations of count two and one Which had to deal with whether or not those sexual acts were caused by force and threats The only evidence of force and threats were DA's the minor victims Statements and so the case rested on DA's credibility and Cruz's defense theory throughout trial was very clear He argued that DA had a motive to lie about the force and threats and that motive arose in 2019 years after the incidents because of a custody hearing involving their son and DA was worried that she would lose custody of her son and that Cruz might have some rights over the son and that's when these Accusations arose so throughout trial from opening to closing Cruz was attempting to attack Not only her credibility, but specifically say that she had this motive to to lie about the force and the threats and so given this context the evidentiary errors that happened throughout trial Cumulatively make this an unfair trial for mr. Cruz because the errors tended to bolster DA Enhance her credibility with inadmissible statements while at the same time cutting off the defense from cross-examination and in mending other evidence that was actually contemporaneous posts or images from the time of the alleged Abuse or at least before she made those accusations in the brief I raised three standalone issues and then also cumulative error today I was going to talk about all of them in the context of cumulative error Beginning with the most egregious which was the in the admission of DA's out-of-court statements All of which happened after her motive to lie arose so they were not admissible as prior consistent statements as the government argued below and the court agreed below and Those came in through three witnesses through the detective who testified about what DA had told her also through the forensic examiner same and then most egregiously through this half-hour audio interview of DA's statements to the case agent that audio interview was recorded just days before the indictment came down in the case and it was The I believe it was the last exhibit that the government introduced through its last witness on the second day of the trial after it determined that it needed more evidence to enhance the DA's credibility and the government argues that Mr. Cruz waived it hit this objection Below there is no evidence in the record of an intentional Relinquishment or abandonment of a known right? No one was talking about this Requirement that the statements be have been made pre motive And so with that Audio interview not only was there these were these multiple 30 minutes of DA's Statements about what had happened that of course the government relied on in closing talking about how often DA had to make her statements how consistent they were And you know, obviously how awful it was that she had to make these statements multiple times Those themes from the government's closing were also what the case agent was allowed to testify through the audio in interview because even though Cruz objected to the case agent's statements about how courageous and brave and consistent and believable DA was those were statements he made in the audio recording the court allowed those to come in The government argues that make sure on that point The encouragement Getting a witness to continue What was said about that is a cautionary matter to the jury. There were no cautionary instructions about that The agent had testified earlier before Cruz's interrogations were played that he does especially with a suspect Try to make that suspect feel comfortable, you know, not being judged And then after the audio was played Of the DA's interview the case agent said he uses a technique of leading by believing and so he believes the the witness And then he added And DA gave me nothing to not to not believe her about no reason not to believe her and that the what also the jury heard so Essentially the the agent was testifying about the believability of DA and The audio interview began with him talking about how inconsistent and unbelievable Mr. Cruz's statements had been and so he's the agent through this audio is Playing a role of essentially an an oath keeper or telling the jury who to believe and that is not something that's permissible Under the rules and it mirrored on to what the government's argument was at closing Her consistency is her corroboration the government said Additional errors that tilted the scales toward DA were that the Government was allowed to elicit from DA's grandmother evidence of the grandmother's prior sexual abuse and trauma Cruz objected as irrelevant The grandmother was allowed to continue opining that she was not surprised that DA Made the accusation so late after the effect because that's what the grandmother had done in her case So it was not about her perceptions of DA It was about the the grandmother's own personal experience and that is not a permissible opinion Testimony and not helpful to the jury because the jury is he is hearing the evidence and can make those calls itself the last issue raised in terms of ruling in favor of the government of the evidence they wanted to offer is the Colleen Police Department detectives outcry opinion testimony where she is being asked And to testify essentially and says that a lot of the time Sexual abuse victims make the accusations much later after the fact the defense did object to This as irrelevant. She was not qualified as an expert opinion the government didn't assert below that she was an expert the government said that her testimony about The how accusations happen in other cases were relevant to her training and And then she was allowed to testify and essentially bolster DA's Thus the pattern of how this came out with DA that it was much later after the fact that she made the accusations and so Part of Cruz's defense strategy, of course was to test the credibility of DA And he attempted to do so by introducing Facebook posts that Did span many years, but most of them were focused on at the time of the alleged sexual acts 2015 to 2016 up to that 2019 accusation that she made and the defense tried to introduce those Facebook posts to tend to negate DA's account of Living in fear of near daily rapes by Cruz Get one of these posts in that makes your point sufficiently there were awful a lot of the rest of this is not just cumulative but is Another matters all together insofar as the impact it would have seemed to me that's the kind of Admission versus exclusion decision that the district judge has given a lot of Discretion on why isn't it within the range of discretion not ever? To allow one that makes your point in and whatever else was said to the jury You don't know what that was about. They're all there a lot of other posts a lot of other whatever you want to call these things That make similar points. I Have the actual facts before it of what those posts were and when they were made so that the jury could assess DA's credibility for the account of what she said happened back then in Big Bend against the impression that she's leaving on Facebook and Understanding is the concept you wanted the jury to grab hold of is this This girl had gone through her life doing when this alleged abuse was occurring without any indication in these Communications with her friends that she was troubled or otherwise any references to it Was the jury informed of that more generally that that's what Was in these posts So my recollection is that the jury was not informed more generally da did authenticate the Facebook posts but the posts themselves were not admitted into evidence for the And there was no questioning in front of the jury about Generally, how many times did you make these posts the court initially cut off any sort of questioning about posts? And after the defense attorneys repeated Urging to let in this relevant information the court allowed Cruz to ask about one post and He did so he tried to look for another one. The court said no, that's all you're getting no more And I think in the context is particularly of the entire trial Where da testifies and then her inadmissible statements come in through other people and then there's audio interview of Of her there were there was a mountain of evidence to quote the defense attorney that the court let in giving extensively way to the government and only letting Cruz examine about one Facebook post and by what I could tell from the exhibit there were two maybe three other ones that were from the contemporaneous time of big bend I don't think it would have been overkill or overly cumulative to ask about those in the context of all the the times the jury got to hear from da and The importance of her credibility and that this was some of the only evidence from da's own words if you call Facebook post that of what was going on at that time because Other than da's testimony, you know, there is no witness testimony. There's no physical corroboration and no other current contemporaneous statements But I understand the court's concern with that, but I think you know that can still go is an error ultimately that can go to the cumulative Prejudice that there's no pretrial addressing of that. There was no motion limiting motion to otherwise Limit there was not Getting this issue as On the defense exhibit lists in contrast to da's audio interview, which was not listed on the government's witness list but the government to my recollection did not do any motion and limine on on that and then the others somewhat similar issue is about the 32nd videos, I believe there were three of them from an amusement park trip that da took with Cruz in 2019 my apologies. I said 2018 in the brief, but after looking closer at the record, it does look like it was July 2019 about two months before Da made the accusations that the defense was trying to introduce these videos to show how they were Interacting at the amusement park da did authenticate them. She said she remembered posting them remembered the trip And they were not allowed because da said that those, you know were the post I think maybe there was a misunderstanding of I think it's rule 6 13 B Where you have to ask the witness about these prior? Inconsistent statements, but just because the witness says yes, that was the statement I made doesn't mean it isn't admissible and here it was admissible to tend to negate her account of being in fear of Cruz and so With the credibility being the crux of this case Those different rulings would have produced a very different trial Where the defense the government's theory in closing couldn't have been her corroboration is The her consistency they repeated that several times relying on those inadmissible statements And and Cruz tried his best to introduce that evidence negating credibility and I think that's why this is a harm because it was a close case on credibility Especially once you remove those those statements And and so for those reasons We would ask the court to reverse on counts one and two There are no further questions now, I've reserved time for rebuttal. Thank you Good afternoon, may it please the court Richard Durbin for the United States. I Would miss Kimmelman has done a great job. She always does but I would put into Context this was not simply a question of DA's credibility, but there was also a question there of mr. Cruz's credibility because two recordings of interviews with him were also played to the jury and the context of this is the the counts that are an issue or counts one and two which are our Sexual assault of a minor between July of 2015 and April of 2016 the significance of that time period is that's when they lived in Big Bend National Park and that gave rise to Jurisdiction for the offenses. She was 12 and 13 years old at the time Her testimony was that she was groomed by him when they lived in Florida before they came she was Attacked by him and raped in Florida on their way to leave to Big Bend And then she was raped multiple times while they lived in Big Bend in April of 2016 They moved out of the Big Bend Park so that whatever relationship continued beyond that was not subject to federal Jurisdiction and he wasn't charged with that conduct that puts into some Context the relevance of the Facebook postings prior to that time period this was something that he did over a lengthy period of time and I would submit the district court was not unreasonable in Finding that it was not particularly relevant what she was posting on Facebook in 2019 to what he was doing and how she was reacting to him in 2015 and 2016, but I'll get to test was a testimony that Cruz though was still having Forcing himself on her were doing these during the time of these Facebook posts My recollection of the testimony or understanding of it is there there was still sexual contact between them, but it was It was not described. It was she didn't go into her testimony didn't go into description of the nature of it and and so the the significant descriptions were during that 2015 2016 time period and in the context I would I would say is is basically The the question was his his Statement to investigators was I didn't start this she did This 12 year old was the aggressor in this is basically what his story was and she said Basically, he groomed her and then he attacked her on these occasions and told her don't tell anybody and he used actual physical Violence while he was While he was in Big Bend at one occasion swinging a machete into a breakfast nook He also smashed up her things He destroyed things in her room, and so he threatened her and he actually demonstrated that he would use violence The able counsel that you identified on the other side among the points is that It's only DA who's saying these things Well, I corroborated the machete incident. No one corroborated rated that as I understand it Well to what extent is there any evidence that would raise this crime on count to? guilt of counts one and two other than from DA herself what he said and what's in his Recorded interviews is he acknowledged that he was doing violent things. He didn't say he was doing violence to her when he was Perpetrating sexual acts upon her, but he acknowledged that he smashed things He tried he threatened her with harming himself. He did harm himself at one point. He attempted suicide He minimized he tried to say it was for other reasons But actually what he was describing was exactly what she described and it was during more or less the time period That is alleged in those two counts of the indictment so that was some corroboration And and the jury was able to evaluate the extent to which he was minimizing because he started out He didn't want to talk about it in his first interview, and then he said well. I didn't start this I didn't start this, but he repeatedly 16 times in that interview He called himself a monster And he said I should go to prison and in the second interview admitted acknowledged that he was committing violent acts In in her presence and and that they were clearly directed toward toward her and her siblings. He also made threats regarding doing similar conduct to her sister and and and and that was That was some corroboration. There was also additional corroboration in the form of the testimony of the grandmother and the grandmother She she was not entirely consistent. She said several things, but she did say That she she observed that that DA had fear and she also Observed that she appeared to be upset friend Tucker testified Not so much about what DA's conduct was but about what? Cruz's conduct was and his conduct was very controlling very possessive He wanted to know where she was and there was testimony that he wanted her to go with him He wanted to pick her up at school and she didn't want to go with him and she didn't want him to pick her up at school so there's Corroboration of her testimony in the testimony of other witnesses as well as in the statements of Cruz himself We understand how far this this problem of Testimony or statements being made after a motive for deception arising what? Evidence or what testimony came from DA that is not affected by this problem that she had a motive to fabricate I'm not I'm not sure that I can tell the court that that it's completely irrelevant to everything that happened after the charge dates But when it comes to for example questions about the cross-examination by the use of the Facebook postings The the if there was a motive to fabricate it came up in 2019 Or 2018 at the earliest 2019 whenever the Child Protective Service statements come from her that predate that I don't believe there are any your honor that statements were after that because that's what prompted the investigation But as far as the contemporaneous Facebook postings were concerned She didn't fabricate there's no suggestion that she was fabricating things back in 2015 2016 and her Facebook postings Frankly the district court as I read the district court said those aren't really very probative I'll let you ask a question about it but I'm not gonna let you go into it and interestingly the one that he asked about was after they had left Big Bend and And I would submit well, so what is she supposed to look like on Facebook if this guy has threatened her and used force? Against her in 2015 and 16 and she's doing posts in 2018 and 19 It is there some particular type of fear she's supposed to manifest I'm not sure how you would even describe that if you look at the posts The posts actually are I mean, I think they're heartbreaking She's she's crying out for friends. She's crying out for Affirmation. She's got a posting of a conversation between the devil and God about a child who is a sinner I Think the district court probably did them a favor not letting them go far too far into it But I don't think it was an abuse of discretion to say I will let you ask about it She admitted to the statements. She admitted to going to the amusement park in 2019 several years after the assault and and well after the assaults had ended and and she Acknowledged that she wasn't thinking about him at the time that she was on that amusement park ride and I'm not sure how the That a child having fun at amusement park is going to be somehow reflective of she's scared. She's frightened or she's not frightened I just don't think there's a Logical connection between those things Mr. Durbin, is it clear from the testimony when the sexual relationship between DA and Cruz started? Quite apart from whether it was by force or whatever. It is it is clear that it began when they were in Florida and how old was she at that was it's not clear whether she was 11 or 12 Her birth date is in late November of 2002 the the first sexual assault in September 7th of 2015 and she testified. Well before that he would have her he he put her his hands down her pants and and Basically did some grooming. How old would How old was she when the child was born? She was I believe she was 14. The child was born in mid-november of She was born in 2002 and The child was born in 2015 I'm 20. I'm sorry. It's 2018. I think it's I think she was 14 or 15 at the time Okay, and she said that the relationship ended when she was in the pregnancy Some months into the pregnancy and that's when the relationship ended With respect to the prior statements, I think I've summarized what the corroboration was With respect to I mean the prior statements They weren't admissible The the the waiver argument is based largely on The district court read the rule read 801 d 1 b 1 And asked if I'm getting it wrong, please tell me and the defense counsel moved on to another objection There was some back and forth But there but there was no explanation of why the court's ruling on that was was wrong and then moved into well It's not fair. You didn't let me ask these questions and it's cumulative I think that that's Waiver is a close call But I but I I don't say that it's not it's not beyond the realm of understanding that in the in the In the record with respect to the closing argument. I find two references to her prior Statements at page 1022 of the record the prosecutor said she provided numerous consistent statements And then said you're the judges of credibility does she impress you as honest and then two pages later at 1024 She says the prosecutor says her own consistency is corroboration Those are the statements that I find I that it didn't go it didn't go beyond that As far as I can tell in terms of relying on it I Our argument has to be on the prior statements that largely it was harmless It did not affect his substantial rights. The statements were cumulative And there was there was good corroboration of what she was saying about the time period when the sexual assaults occurred with respect to the confrontation issue as I say I think the district court was reasonable in Finding that there wasn't a whole lot of relevance to the Facebook posts and the questioning for the reasons that I've described The very tenuous relevance And and the the test really for harmlessness on the confrontation and and so I don't think there was error with respect to the Confrontation, but if there was I believe that it was a harmless error Because on this record even if they had asked even if he had asked questions about some of the Facebook postings The question is would the jury have gotten a significantly different impression of the witnesses credibility? I don't see that in defense exhibit one And I would also point the court to the extensive cross-examination That was done by Cruz's lawyer during DA's testimony. It went on at least 12 times He asked her if she reported He went over and over again. Did you report did you report? Did you report? Did you report that was the thrust of it? There was also Some testimony about She did not manifest fear in various forms One was he did ask questions about the amusement park ride and she gave an explanation And the jury could evaluate that he what she was asked about a posting that said in 2016 after they had left big band. I love my life and all who are part of it. I'm never giving it up I've got it all and then there was testimony from her grandmother Rosemary Ogo Who said that she said at times da did not appear upset. She was asked that question three times by by Cruz's lawyer She said that da was not a friend afraid to have friends visit She didn't see anything indicating da feared Cruz when she was visiting in Killeen later in the in the in the time period That's involved here. Did you observe da feared Cruz? She said she was asked that And so there was there was ample cross-examination there was also evidence that he put on through relatives Portillo and Katrina benevente who both also testified that when they saw Da she did not appear to be She did not appear to be fearful. She did not appear to be afraid of it So there was testimony was covered in the record with respect to the recorded interview As far as those are concerned There I don't believe there was a hearsay error. He wasn't testifying to for the truth of the matter. I think the district court Accurately observed the jury gets what this is about. He's encouraging her. This is about trying to get information out of a witness He's not attesting to it. He's not vouching for it He's not trying to he's trying to encourage her to feel to feel comfortable and safe to talk to him And he even explained on cross-examination after the recording that he uses the approach of have the witness Believe that you believe their story and it's a it's a matter of a technique of interview It was not vouching for it was not in there for the purpose of vouching for her credibility And finally, let me address these a couple of other issues that counsel raised I think we've covered the 30 seconds of the music amusement park I don't think it had very much relevance the amusement park ride in 2019 The testimony by Ogo that she had also been a victim of abuse That was very brief testimony She sort of volunteered that as she went along The question was did it surprise you that DA kept a secret? She said no what happened to me? There was objection, but the court allowed her to go on and she basically was explaining the basis for her Observations of DA's behavior, but she wasn't testifying as an expert with respect to the Detective Lawson who testified that she had done a number of invest 400 or 500 Investigations Lawson said there is no pattern concerning disclosure and a lot of times disclosure can occur years later I don't think there's anything remarkable in that particular testimony. It was based on her own observations The objection was not based on lack of notice or lack of qualification or lack of expertise. It was The speculation about other cases is not relevant. That's what the objection was at the trial court It didn't call for speculation It was testimony that was in passing that again Gave explanation to the witnesses testimony based on on the circumstances what I would would leave with a court in my last couple of minutes is Basically the question for the jury was do you believe what DA said? When she said that this older this man 10 years 12 years older than her sexually assaulted her using force and using threats Or do you believe his testimony that no she went through all these different manners of Having intercourse with him as a 12 year old that she initiated it and That he didn't he was not the predator. He called himself a monster He said he should go to prison. He admitted that he did did commit certain acts of violence If you look at their two stories and leave it to the question to the jury of which one is more plausible Which one makes more sense? that she was somehow some some vixen who was who was tempting him or He was a predator and and he even acknowledged that he stayed away from other children because he wasn't Confident that he could control himself. I think under those circumstances the errors that have been pointed out I don't think that they affected the jury's determination. That was the question before the jury. It was a fairly clear question And notwithstanding the errors. That was a highly reasonable Interpretation of what the conduct was between them Thank you So there certainly was sufficient evidence and that was because of DA's testimony but then there was the added out-of-court statements that were admitted to the jury and repeated Council referenced testimony about being groomed from what I could tell that did not appear in her own testimony That was solely from the audio recording. That was something the government added in after the fact with regard to the Facebook exhibit it was voluminous So was DA's audio recording that the court allowed the government to fast-forward through inadmissible portions and play a portion of it But that same courtesy was not extended to Cruz's counsel the previous day and the Facebook posts themselves Certainly people have different opinions of how to much to trust Facebook posts but that's a question of wait for the jury to consider not for admissibility and Yes, parts of Chris Cruz's statements in the interrogation were damning but he didn't admit to force and threats against at DA for those sexual acts and Those are things for the jury to consider in a properly Administrated trial which this was not because of the evidentiary errors and there are other cases like tome the Supreme Court case Establishing this premotive rule when it was sent back to the Tenth Circuit The court said vacate and remand the trial needs to be redone because it was just too prejudicial Hendricks is one of this court's cases that made the same ruling based on cumulative error And I would submit that even if the court doesn't think the other evidentiary errors are errors There were not numerous Evidentiary areas with regard to the prior consistent statements. So even though it is one Category of rulings it is multiple errors throughout the course of trial And when the court read rule 801 d2 Cruz that was on the second day of trial after he had already objected to detective Lawson's and The forensic interviewer's testimony the previous day government said no prior consistent statement And so then the second day the court reads the rule and he says well, that's what it says Let me move on because obviously the court was not Going to rule in Cruz's favor, and unfortunately, he didn't know about the pre motive requirement He lodged many objections against that audio recording. I have no doubt. He would have lodged that if he had known about it and Just to complete what Mr. Durbin said about some things in closing there were just a couple more statements Unfortunately, the little girl has had to tell her story story far too many times But it hasn't changed because the truth doesn't change and her own Consistency is her corroboration this poor girl has had to tell different adults what happened to her and yet she's done it and it hasn't Changed her consistency is Repeated theme through the government closing and also with the Grandmother's testimony. It wasn't brief There was the exchange about the irrelevancy of her past sexual trauma and she was allowed to testify about how that formed her opinion of DA's late accusations and Later on she's allowed to text testify the grandmother is about how that sexual trauma caused her anxiety and trauma and How da when she told the grandmother what happened which didn't include force and threats allegations The grandmother explained she did as best she could as traumatized victim. I can emphasize with that. I knew when asked Why da wouldn't have told her about the force and threats the grandma responds Because of the fear that should be blamed for the events because that's the way I felt But you know just from my experience grandma says and so that initial evidentiary ruling allowed other testimony from grandma to to come in that was inadmissible and prejudicial and so with those evidentiary errors we asked the court to Remand the case for a new trial on counts one or two and two so that mr Cruz can have a fair trial and the jury can properly assess the credibility of da and mr. Cruz Thank you Thanks to both of you for bringing your thoughts on this case to us today. It's been most helpful I'll call the